IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | **CRIMINAL ACTION** |
| | ) | **NO.  04-CR-489** |
| | ) | |
| NORVEL VAS, | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**RUFE, J.**                                                                                                                                                                 **June 1, 2007**

        On February 8, 2007, after a four-day trial, Defendant Norvel Vas was convicted of violating 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms.  On May 11, 2007, the Court sentenced Vas to 120 months' imprisonment, followed by three years of supervised release.  Vas then filed a second pro se Notice of Appeal on May 15, 2007.[1]  While Vas's grounds for appeal are not known to this Court, the Court herein sets forth the facts and procedural history in this matter, and its rationale buttressing the discretionary sentence imposed in this case.  The Court submits that its sentence, imposed in accordance with the sentencing statute, is reasonable, and that no other grounds for appeal appear meritorious.

**I.**       **FACTUAL HISTORY**

        On October 27, 2002, at approximately 8:00 p.m., Philadelphia Police Officers Eric Riddick, Richard Riddick, and Mark Moore were on patrol in the vicinity of the 5500 block of Beaumont Avenue in Philadelphia, where several robberies and gunshots had been reported over the previous several days.  The Officers were dressed in plain clothes and driving an unmarked police

---

[1] Document No. 190.

car. Officer Richard Riddick drove the patrol car, Officer Moore rode in the front passenger's seat, and Officer Eric Riddick, a nineteen-year veteran of the Philadelphia Police Department, rode in the backseat of the car. As the officers traveled westbound on Beaumont Avenue, they observed three black males standing in front of 5513 Beaumont Avenue alongside a parked car. One of the men, who stood approximately ten feet apart from the other two males, was wearing a dark blue baseball hat, a pair of sunglasses, and a blue, long-sleeved shirt underneath a white tee-shirt. This man was later identified as Defendant Norvel Vas.

Vas looked at Officer Eric Riddick overtop his sunglasses, ducked down behind the parked car, then jumped up from his crouched position, and began running eastbound on Beaumont Avenue toward 55th Street. Officer Richard Riddick stopped the patrol vehicle, and Officer Eric Riddick exited the vehicle to approach the men. Officer Eric Riddick asked the two men still standing by the vehicle why Vas ran away, and they responded by saying only that they did not know him.

Officer Eric Riddick then saw Vas turn the corner at Beaumont Avenue and run north on 55th Street. Officer Eric Riddick walked to the corner of Beaumont Avenue and 55th Street and looked up 55th Street, but he did not see Vas. Officer Eric Riddick then walked to the entrance of the driveway that ran behind the houses on Beaumont Avenue. Looking down the driveway, Officer Eric Riddick saw Vas place a large, dark-colored handgun in the left front wheel well of a silver Mitsubishi parked in the driveway. Vas did not see Officer Eric Riddick, as the officer had backed out of the driveway after he observed Vas place a gun on the wheel well. Officer Eric Riddick then saw Vas walk back toward him in the direction of 55th Street. Vas was no longer wearing the dark blue baseball hat, sunglasses, or white tee-shirt. When Vas reached the end of the driveway at 55th

Street, Officer Eric Riddick identified himself as a police officer and asked Vas to approach. Vas stated to the officer that he had done nothing, and again ran away.

Vas ran north on 55th Street, then turned westbound onto Florence Avenue. Vas ran onto the porch of a home at 5502 Florence Avenue, and banged on the door for the occupant to give him entry, shouting: "Aunt Lucy, Aunt Lucy, it's me, let me in, let me in." Officers Richard Riddick and Moore then joined Officer Eric Riddick in front of the 5502 Florence Avenue property. The officers apprehended Vas on the porch and detained him. Once Vas was detained, Officer Eric Riddick returned to the driveway where he had seen Vas place a gun in the wheel well of the silver Mitsubishi. There, he recovered a loaded nine-millimeter handgun and a loaded forty-caliber Glock pistol with an "obliterated" serial number. Officer Eric Riddick continued searching near the silver Mitsubishi and retrieved Vas's discarded clothing—the dark blue baseball hat, sunglasses, and white tee-shirt. Officer Eric Riddick returned with the recovered firearms and personal items to the location where Vas had been detained, and directed Officers Richard Riddick and Moore to arrest Vas.

## II.   PROCEDURAL HISTORY

The procedural history in this matter includes two separate trials and a substantial amount of filings. While Vas exhibited a high level of intellect in both his oral advocacy skills and in his ability to research and understand the law, his obstreperous and litigious personality often burdened the record with unnecessary filings and unreasonable delays. Nonetheless, the Court entertained all reasonable requests and exercised leniency where necessary in light of Vas's intermittent pro se representation.

On September 21, 2004, Magistrate Judge Charles B. Smith appointed the Defender

Association of Philadelphia, Federal Courts Division, to represent Vas at trial.[2]  The original trial date was set for November 26, 2004.  On September 23, 2004, Benjamin B. Cooper of the Defender Association of Philadelphia entered his appearance as counsel for Vas.  Four days later, Mr. Cooper filed a Motion to Withdraw as Attorney due to a conflict of interest. After a hearing, the Court granted the motion to withdraw.

On October 13, 2004, the Court appointed as substitute counsel Jeanne Damirgian from the Criminal Justice Act ("CJA") Panel for the Eastern District of Pennsylvania.[3]  On October 29, 2004, the Court granted Vas's unopposed Motion to Continue Trial Date and Extend Time Within Which to File Pretrial Motions.[4]  On March 16, 2005, the Court granted Vas's Application for Additional Funds for Investigative Services to allow Vas to hire a private investigator.[5]

While preparing for trial, Vas and Ms. Damirgian reached an impasse concerning trial strategy, preparation, and how best to utilize the services of the private investigator.  Their attorney-client relationship deteriorated to the point where the two were unable to communicate to develop a cogent defense.  As such, Ms. Damirgian filed a Motion to Withdraw as Counsel on May 27, 2005,[6] which the Court granted after conducting a hearing on the motion and learning of Vas's

---

[2] At Vas's initial appearance in federal court, he was represented by Rossman Thompson, Esquire, an assistant federal public defender.

[3] Document No. 20.

[4] In the following months, the Court granted two trial date continuances requested by Vas and one such request by the government.

[5] Document No. 40.

[6] Document No. 42.

4

acquiescence in counsel's decision to withdraw .[7] The Court thereafter promptly appointed Patrick Egan, also a member of the CJA panel, as substitute counsel.[8] On June 14, 2005, Vas, through counsel, filed another Motion to Continue the Trial Date,[9] which the Court granted. The Court set the final trial date for October 25, 2005.

Between July 22, 2005, and October 17, 2005, Vas filed five pro se motions and two letters with the Court despite being represented by counsel. These pro se filings included a Motion for Discovery,[10] a lettered addendum[11] to supplement his attorney's Motion to Suppress Physical Evidence,[12] a Notice of Particulars Concerning the 911 Call of Citizen Jean Hastings,[13] a Motion for Change of Appointed Counsel,[14] a Request for Witnesses and to Change Appointed Counsel,[15] a letter stating that "Mr. Patrick Egan has advised me to represent myself,"[16] and a Motion as to Use of Extrinsic Evidence/Witness Impeachment, Defense Witness List/Discovery Issues wherein he "plead[ed] . . . the Court to change his appointed counsel."[17] On October 5, 2005, the Court heard

---

[7] Document No. 45.

[8] Document No. 46.

[9] Document No. 48.

[10] Document No. 50.

[11] Document No. 53.

[12] Document No. 51.

[13] Document No. 59.

[14] Document No. 61.

[15] Document No. 64.

[16] Document No. 66.

[17] Document No. 69.

Vas's Motion for Change of Appointed Counsel, and denied the motion as groundless.[18]

Vas's trial commenced on October 25, 2005. Moments before the jury selection process was to begin, Vas informed the Court through counsel that he "wish[ed] to proceed pro se and have [Mr. Egan] as backup counsel."[19] The Court denied Vas's request to proceed pro se. Moments later, Vas requested again that he be allowed to represent himself. The Court heard argument on Vas's open-court, impromptu motion to proceed pro se, but denied the motion. Vas proceeded to trial represented by Mr. Egan and, after a two-day trial, was convicted for violating 18 U.S.C. § 922(g)(1).

On November 7, 2005, Vas, through counsel, timely filed, among several pro se post-conviction motions,[20] a Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33.[21] Upon appointment of Edward Meehan as new counsel for Vas after the Court granted Patrick Egan's Motion to Withdraw as Attorney, Vas moved to withdraw his first Motion for a New Trial[22] and filed a second Motion for New Trial.[23] In a Memorandum Opinion and Order filed on May 31, 2006, the

---

[18] At the hearing, Defendant complained that Mr. Egan failed to call all three arresting officers to testify at his suppression hearing. The Court notes that Mr. Egan called two of the three arresting officers, but made a strategic decision not to call the third officer. Based on the arguments and information provided at the October 5th hearing, the Court found Mr. Egan to be competent and capable of representing Defendant in his criminal trial.

[19] See N.T. 10/25/05 at 21.

[20] See Document Nos. 83-86.

[21] Document No. 88.

[22] Document No. 103.

[23] Document Nos. 108 & 109.

Court granted Vas's Motion for a New Trial.[24]

On June 5, 2006, Vas filed a lettered request for another change of appointed counsel.[25] After a June 15, 2006 hearing, the Court denied Vas's request.[26] On June 16, 2006, the Court granted Vas additional time to prepare for his second trial.[27] Vas subsequently filed a stream of pro se lettered requests and pretrial motions,[28] including a Motion to Assert/Invoke Defendant's Right of Self Representation and Remove Appointed Counsel.[29] The Court denied Vas's request to represent himself pro se and to remove appointed counsel.[30] The Court also disposed of each of Vas's other requests and motions by Order, and the Court herein incorporates by reference its Orders of October 27, 2006, November 3, 2006, November 27, 2006, January 12, 2007, and February 2, 2007.[31]

---

[24] Document No. 111. As set forth in the May 31 Memorandum Opinion, although Vas's antics cloud the issue of whether or not his request to represent himself was legitimately made and despite the fact that the Court ultimately conducted a thorough inquiry to determine whether Vas's request to proceed pro se was made in full recognition of the charges against him, possible punishments and defenses, and the logistical pitfalls inherent in self-representation, the Court concluded, in an abundance of caution, that it erred in its failure to immediately conduct a Faretta inquiry when Vas made his initial request to represent himself. See Faretta v. California, 422 U.S. 806 (1975). As such, the Court granted Vas a new trial.

[25] Document No. 112.

[26] Document No. 114.

[27] Document No. 117.

[28] Document Nos. 120-23, 125, 129-39, 141, 148, & 149.

[29] Document No. 137.

[30] Document No. 150. The Court notes that it entertained Vas's request to represent himself pro se and conducted an appropriate colloquy. See N.T. 11/21/06 at 6:1-8:17. Specifically, Vas could not answer simple "yes" and "no" questions such as "do you understand that you have a right to counsel; yes or no?" Id. Accordingly, the Court denied Vas's request to represent himself. Id.

[31] See Document Nos. 128, 140, 150, 158, & 161.

Vas's second trial commenced on February 5, 2007. Prior to selecting the jury, Vas renewed his request to represent himself at trial.[32] After the Court conducted an extensive colloquy with Vas, the Court concluded that Vas was competent to represent himself at trial and did so.[33] After two days of testimony, the Court charged the jury, and after a day of deliberations, the jury rendered its guilty verdict on February 8, 2007.[34] Vas did not file any post-verdict motions prior to sentencing, but on March 14, 2007, prior to his sentencing, he filed a pro se Notice of Appeal.[35] On March 19, 2007, the Third Circuit issued a Hashagen Order[36] that stayed review of his appeal until sentence was imposed.

### III. SENTENCING

On May 9, 2007, the Court sentenced Vas to a partially consecutive, partially concurrent term of 120 months' imprisonment, and three additional years of supervised release.[37] Eighty-four months of the sentence are to run consecutive to the sentence that he is currently serving for a homicide conviction in Pennsylvania, and thirty-six months of the sentence are to run concurrent.[38] Considering the facts of this case, Vas's criminal history, and all relevant § 3553(a) factors established by Congress, the Court believes that this is a reasonable sentence, and that the

---

[32] N.T. 2/5/07 at 11:2-6.

[33] Id. at 11:2-23:7.

[34] N.T. 2/8/07 at 9:21-22.

[35] Document No. 175.

[36] See United States v. Hashagen, 816 F.2d 899 (3d Cir. 1987). The Court was not apprised of the Hashagen Order and became aware of it only after independent review of the appellate record.

[37] N.T. 5/9/07 at 64:10-65:24.

[38] Id.

sentence should be affirmed if Vas challenges its reasonableness.

For a sentence to be reasonable under Booker, "[t]he record must demonstrate [that] the trial court gave meaningful consideration to the § 3553(a) factors,"[39] including the range suggested by the sentencing guidelines.[40] Accordingly, the Court must give "meaningful consideration" to "any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record."[41] "[T]here are no magic words that the district judge must invoke when sentencing," however, and the district court need not mechanically state by rote that it has considered each of the factors when imposing a sentence.[42] A sentence must be affirmed by the Third Circuit Court of Appeals where the district court issued a sentence "for reasons that are logical and consistent with the factors set forth in section 3553(a)."[43] The party that challenges the

---

[39] United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006).

[40] Under 18 U.S.C. § 3553(a), the relevant factors to be considered in imposing a sentence include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
(5) any pertinent policy statement . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

[41] Cooper, 437 F.3d at 329, 332 (internal citations omitted).

[42] Id. at 332.

[43] Id. at 330.

sentence has the burden of proving that it is unreasonable.[44]

As set forth in the revised Presentence Investigation Report ("PSR"), prepared by Leon C. King of the U.S. Probation Office on April 30, 2007, because Vas has at least two prior felony convictions for crimes of violence, he received a base offense level of 24 under the Guidelines.[45] He also received two points under the specific offense calculation because one of the two guns he was convicted of possessing in this matter had an obliterated serial number, thereby resulting in a total offense level of 26.[46] The Probation Office further computed a criminal-history score of 17, placing Vas in a criminal-history category of VI.[47] Based on a total offense level of 26 and a criminal-history category of VI, the advisory guideline range for imprisonment is 120 to 150 months.[48] The statutory maximum for a charge under 18 U.S.C. § 922(g)(1), however, is 120 months.[49] Accordingly, the Probation Office set forth that the effective guideline range is 120 months.[50]

Vas objected to his calculated guideline range on three primary grounds:[51] (1) that he

---

[44] Id. at 332.

[45] See Apr. 30, 2007 Presentence Investigation Report ¶ 14. In assessing Vas's sentence, the Probation Office used the November 1, 2001 edition of the Guidelines Manual. Id. ¶ 13.

[46] Id. ¶¶ 15, 23.

[47] Id. ¶ 47.

[48] Id. ¶ 79.

[49] Id.

[50] Id.

[51] The Court notes that Vas objected to the PSR on more than the three grounds listed above, but these other grounds lacked merit and focused on the language used to describe Vas's past criminal acts. Accordingly, they did not provide the Court with any basis to amend the PSR or reduce Vas's sentence.

should not have been given a two-point enhancement in his specific offense calculation for possessing a gun with an obliterated serial number;[52] (2) that his base offense level was improperly calculated because he has only one, not two, prior felony convictions for crimes of violence;[53] and (3) that his criminal history was improperly calculated because he was given three points each for two offenses that arose from the same facts and circumstances.[54]

First, with respect to the two-point enhancement given to Vas for possessing a firearm with an obliterated serial number, the Court concurs with Vas that the jury found in his favor as to a non-binding special interrogatory that questioned whether they found, beyond a reasonable doubt, that Vas possessed a firearm with an obliterated serial number.[55] Nonetheless, the Court is guided by a preponderance-of-the-evidence standard at sentencing, and finds that it is more likely than not that Vas possessed a firearm with an obliterated serial number.[56] Even if these two points were eliminated from Vas's total offense level, his total offense level would be 24. This total offense level, in combination with a criminal history category of VI, results in a recommended sentencing range of 100 to 125 months, and the sentenced imposed by the Court falls within this range.[57]

Second, as set forth during sentencing, the Court will not change Vas's base offense level because the Court finds that Vas did commit two prior crimes of violence, appropriately

---

[52] See N.T. 5/7/07 at 26:2-15.

[53] Id. at 29:6-21.

[54] Id. at 41:1-8.

[55] See id. at 26:2-29:3.  See also N.T. 2/8/07 at 11:13-16:19.

[56] N.T. 5/7/07 at 26:2-29:3.

[57] Id.

yielding a base offense level of 24. There is no dispute that Vas's prior robbery conviction is a crime of violence.[58] Vas argues only that his prior charge for resisting arrest does not qualify as a crime of violence.[59]

In United States v. Manigault,[60] the Third Circuit discussed the process of determining whether a crime qualifies as a crime of violence as defined in Section 4B1.2(a) of the Guidelines:

> Application Note 1 defines a crime of violence as including conduct which 'by its nature, presented a serious potential risk of physical injury to another.' U.S.S.G. § 4B1.2 Application Note 1. We look only to the elements of the charge and not to underlying facts in determining whether a particular conviction qualifies as a crime of violence. Id. Manigault pled guilty to 18 Pa.C.S.A. § 2705, which criminalizes 'recklessly engag[ing] in conduct which places or may place another person in danger of death or serious bodily injury.' The two elements of the crime are 1) recklessness and 2) placing another in danger of death or serious bodily injury. Recklessly placing another in danger of 'death or serious bodily harm' is clearly conduct presenting a 'serious potential risk of physical injury to another.' U.S.S.G. § 4B1.2 Application Note 1. Therefore, a violation of 18 Pa.C.S.A. § 2705 is a crime of violence and Manigault is a career offender under § 4B1.2.[61]

The crime at issue here, *resisting arrest* under 18 Pa.C.S.A. § 5104, is defined as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

---

[58] Id. at 29:12-15.

[59] Id. at 29:6-40:12.

[60] No. 06-2024, 2007 WL 1109243 (3d Cir. Apr. 13, 2007) (not precedential opinion).

[61] Id. at *3.

In United States v. Boynes,[62] a not-precedential opinion, the Third Circuit summarily concluded that a resisting-arrest conviction is a crime of violence as defined by the Guidelines.[63] The Court agrees. Resisting arrest requires either "a substantial risk of bodily injury" or "substantial force to overcome the resistance," and this is clearly conduct presenting "serious potential risk of physical injury to another." Accordingly, the Court denied Vas's request to amend his base offense level, and concluded that a base offense level of 24 is appropriate.[64]

Third, the Court agreed with Vas's third objection that he was improperly assessed three additional points for two crimes that arose out of the same facts and circumstances. Paragraph 42 of the April 30 revised PSR assessed three points against Vas on a conviction for carrying firearms without a license, and paragraph 44 of the PSR assessed three points against Vas on a conviction for third-degree murder.[65] After a thorough discussion of the facts surrounding these two convictions at the May 7, 2007 sentencing hearing, Vas and the government both made clear that the arrests leading to these convictions occurred only a few hours apart, and that the firearms charge was related to the murder charge.[66] As a result, the Court reduced Vas's total criminal history points from 17 to 14 and ordered that the PSR be revised to reflect this reduction. Because only 13 criminal-history points are needed to establish a criminal-history category of VI, the reduction to 14 points resulted in no change to the Guidelines range. On May 10, 2007, Mr. King of the Probation Office

---

[62] 65 Fed. Appx. 869 (3d Cir. 2003).

[63] Id. at 872 ("The other crime of violence was a conviction in state court for resisting arrest following a scuffle, his having been apprehended for a traffic offense.").

[64] See N.T. 5/9/07 at 13:11-23.

[65] See Apr. 30, 2007 Presentence Investigation Report ¶¶ 42, 44.

[66] See N.T. 5/7/07 at 40:13-51:15.

13

filed a revised PSR reflecting this reduction in criminal history points.

Finally, after addressing each of Vas's objections to the PSR, and after allowing Vas the opportunity to speak candidly with the Court prior to sentencing about his criminal past and reasons for living the life that he has, the Court discussed in detail its reasons for imposing a 120-month sentence.

> I'm looking at somebody with a history of arrests and a history of convictions for which you served sentences . . . . This has all been since you were eighteen . . . and it continues . . . throughout your twenties and then into your thirties. . . . So, you're not learning from your mistakes which is the biggest single factor that I need to assess. Your ability to learn is the most important piece of you being rehabilitated. . . . You're a violent and dangerous man, Mr. Vas. You may have a personality that says otherwise, but what you have been convicted of numerous times shows a different person than the one who speaks in court. . . . What bothers me is I don't know how to protect the public from you and that's a real concern, that's a real concern to me. . . . So, lets hope you are too old when you get out because you're not safe in the community, and right now that becomes more important than your actual correction or rehabilitation because the factors are not all even in any case. In your case, because you've had so many chances to learn from your mistakes and you haven't, the factors weigh in favor of protecting the public, deterring you, and promoting respect for the law.[67]
>
> There's danger in Mr. Vas if he is let loose in the community because he's never shown anything but [dangerous behavior]. I don't know why, but he is more dangerous to those persons in authority, such as police officers, than others. But, being convicted of homicide of another civilian says that he's probably and potentially dangerous to anyone. . . . There's danger if the Court says run everything concurrently with your history, Mr. Vas. There's danger because others might think that they could get a pass, and a totally concurrent sentence is a pass. . . . So a totally concurrent sentence is not something the Court chooses because of your history and because of the aggravating factors that we have mentioned that are apparent from this case, including your eight prior convictions, six of which involve firearms or acts of violence. Therefore, we look at how much time is necessary for you to learn your lesson to protect the public, to promote respect for the law, to deter you from committing additional crime, and perhaps to offer you some ability to learn skills to rehabilitate yourself . . . .

---

[67] N.T. 5/9/07 at 46:24-49:20.

> Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that Norvel Vas be committed to the custody of the Bureau of Prisons to be imprisoned for a term of one hundred twenty months. I chose that figure because it is the maximum statutory penalty for this crime. It also happens to be the minimum guideline sentence. . . . I think anything less than the maximum penalty for you and your criminal history and your conduct would be egregious.[68]

In light of the above discussion, it is the Court's belief that the § 3553(a) sentencing factors were sufficiently addressed. Specifically, the Court took great measure to carefully consider the nature and circumstances of the offense, the history and characteristics of Vas, and the need for a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of Vas. Moreover, the sentence was at the low end of the recommended Guideline range. Therefore, the Court considers the 120-month sentence imposed in this case to be reasonable and consistent with the § 3553(a) factors.

## IV.  CONCLUSION

After independent review of the record by the Court, the Court failed to locate any potential meritorious issues for appeal stemming from Vas's second trial.[69] At best, Vas may appeal his sentence, and for the reasons set forth herein, it is the Court's belief that the 120-month sentence imposed was reasonable, and consistent with the § 3553(a) factors.

---

[68] Id. at 61:16-64:20.

[69] Beyond the Court's independent review of the record, Edward Meehan, Vas's former attorney, noted his review of the record at the May 7 sentencing hearing. Upon his review, Mr. Meehan advised Vas that because he failed to make objections of record throughout the trial despite Mr. Meehan advising him throughout the trial to make certain objections, he may have waived his ability to appeal potentially objectionable issues. N.T. 5/7/07 at 9:2-24. Mr. Meehan further informed Vas that he received an "incredibly fair trial by the Court" and that even if he did have any motions, it was his belief that by failing to object during trial that he in all probability had waived that right. Id. Finally, he informed Vas that he would not assist Vas in filing any post-trial motions because he did not believe there were any meritorious issues to bring before the Court. Id.

                                                **Respectfully Submitted,**

                                                **/s/ Cynthia M. Rufe**
                                                **CYNTHIA M. RUFE, J.**

**June 1, 2007**