**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NORVEL VAS, | : | |
| Petitioner | : | CRIMINAL ACTION NO. 04-cr-0489 |
| | : | |
| v. | : | CIVIL ACTION NO. 09-cv-5808 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |
| | : | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**RUFE, J.**                                                                                    **August 24, 2012**

On February 9, 2007, after a four-day jury trial, Petitioner Norvel Vas was convicted of violating 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms.  On May 11, 2007, the Court sentenced Vas to 120 months' imprisonment, the statutory maximum, followed by three years of supervised release.  The case is now before the Court on Vas's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  Although most grounds raised in the petition are without merit, for the reasons set forth herein Vas is entitled to a new sentencing hearing.

**I.       FACTUAL HISTORY[1]**

On October 27, 2002, Philadelphia Police Officers Eric Riddick, Richard Riddick, and Mark Moore were on patrol in the vicinity of the 5500 block of Beaumont Avenue in Philadelphia, where several robberies and gunshots had been reported over the preceding several days.  The Officers were dressed in plain clothes and driving an unmarked police car.  As the officers traveled westbound on Beaumont Avenue, they observed three black males standing in front of a home.  As the police car approached the three men, one of them, later identified as Vas,

---

[1] The Court adopts the factual history from its June 1, 2007 Memorandum Opinion.

looked at Officer Eric Riddick over his sunglasses, ducked down behind the parked car, then jumped up from his crouched position, and began running eastbound on Beaumont Avenue toward 55th Street.

Officer Eric Riddick left the vehicle, spoke briefly to the other two men, then walked around the corner to the entrance to the driveway behind Beaumont Avenue. There, he saw Vas place a large, dark-colored handgun in the left front wheel well of a silver Mitsubishi parked in the driveway. Vas did not see Officer Riddick, who had backed out of the driveway after he observed Vas place a gun on the wheel well, and began walking toward him. When Vas reached the end of the driveway at 55th Street, Officer Riddick identified himself as a police officer and asked Vas to approach. Vas stated to the officer that he had done nothing, and again ran away.

Vas ran north on 55th Street, then turned westbound onto Florence Avenue. Vas ran onto the porch of a home at 5502 Florence Avenue, and banged on the door for the occupant to give him entry, shouting: "Aunt Lucy, Aunt Lucy, it's me, let me in, let me in." Officers Richard Riddick and Moore then joined Officer Eric Riddick in front of the 5502 Florence Avenue property. The officers apprehended Vas on the porch and detained him. Once Vas was detained, Officer Eric Riddick returned to the driveway where he had seen Vas place a gun in the wheel well of the silver Mitsubishi. There, he recovered a loaded nine-millimeter handgun and a loaded forty-caliber Glock pistol with an "obliterated" serial number, as well as a baseball hat, sunglasses and white tee shirt Vas had been wearing when first spotted. Vas was then arrested.

## II.    PROCEDURAL HISTORY

The procedural history in this matter includes two separate trials and a substantial number of filings. Vas's first trial began on October 25, 2005. Moments before the jury selection

process was to begin, Vas informed the Court through counsel that he "wish[ed] to proceed *pro se* and have [Patrick Egan, Esq.] as backup counsel."[2]  The Court denied Vas's request to proceed *pro se.*[3]  Moments later, Vas requested again that he be allowed to represent himself.[4]  The Court heard argument on Vas's open-court, impromptu motion to proceed *pro se*, but denied the motion.[5]  Vas proceeded to trial represented by Mr. Egan and, after a two-day trial, was convicted for violating 18 U.S.C. § 922(g)(1).

On November 7, 2005, Vas timely filed several *pro se* post-conviction motions and Mr. Egan  filed a Motion for New Trial.  Mr. Egan then withdrew as counsel, and Edward Meehan, Esq. was appointed.  Vas, through Mr. Meehan, filed a second Motion for New Trial.[6]  In a Memorandum Opinion and Order filed on May 31, 2006, the Court granted Vas's Motion for a New Trial, holding that the Court erred by not conducting a full inquiry into Vas's request to proceed *pro se,* as required by Faretta v. California.[7]

Vas's second trial began on February 5, 2007.  Before jury selection, Vas made a request to represent himself at trial.[8]  The Court conducted an extensive colloquy with Vas, and concluded that Vas was competent to represent himself at trial.[9]  The Court appointed Mr.

---

[2] 10/25/05 at 21.

[3] 10/25/05 Trial Tr. 21-22.

[4] 10/25/05 Trial Tr. 30.

[5] 10/25/05 Trial Tr. 33-34.

[6] Doc. Nos. 108 & 109.

[7] 422 U.S. 806, 835 (1975).

[8] 2/5/07 Trial Tr. 8.

[9] 2/5/07 Trial Tr. 13-23.

Meehan as back-up counsel.  Trial proceeded, and the jury rendered its guilty verdict on February 8, 2007.[10]

Vas did not file any post-trial motions, but filed a *pro se* Notice of Appeal.[11]  On August 31, 2007, David Rudenstein was appointed to represent Vas on appeal.  Mr. Rudenstein challenged the sufficiency of the evidence at trial, and the Court's denial of Vas's motion to suppress physical evidence.  The Court of Appeals affirmed the judgment of conviction and sentence.  Vas timely filed *pro se* the present § 2255 petition.  After his state court murder conviction, which was included in the Court's review of Vas's criminal history during sentencing, was vacated, Vas filed a *pro se* Motion for Adjustment or Reduction of Sentence in light of that state court ruling.

## III.    <u>STANDARD OF REVIEW</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[12]  "Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors."[13]  "Habeas corpus relief is generally

---

[10] 2/8/07 Trial Tr. 9.

[11] Doc. No. 175.

[12] 28 U.S.C. § 2255(a).

[13] <u>Armstrong v. United States</u>, 382 F. Supp. 2d 703, 706 (E.D. Pa. 2005) (quotations omitted).

available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[14]  "[T]he question of whether to order a hearing is committed to the sound discretion of the district court.  In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.  Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. . . ."[15]  If the sentencing court finds "a denial or infringement of the constitutional rights of the prisoner," it may discharge or resentence a federal prisoner.[16]

Unless some exception applies, a prisoner must raise claims on direct appeal before raising them on a petition for habeas corpus.  One exception is for good cause: a prisoner may demonstrate that some external impediment, such as ineffective assistance of counsel, prevented him from raising a claim.[17]  Another exception exists where a fundamental miscarriage of justice would result from a failure to hear the claim.[18]

Because issues of ineffective assistance of counsel are raised throughout Vas's petition, the Court sets forth the standard of review for such claims here.  Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in

---

[14] United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989).

[15] Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) (quotations omitted).  See 28 U.S.C. § 2255(b).

[16] 28 U.S.C. §2255(b).

[17] Wise v. Fulcomer, 958 F.2d 20, 34 (3d Cir. 1992) (quotation omitted).

[18] Id. (quotation omitted).

Strickland v. Washington.[19]  Under Strickland, counsel is presumed to have acted reasonably and

to have been effective unless a petitioner can demonstrate (1) that counsel's performance was

deficient and (2) that the deficient performance prejudiced petitioner.[20]  Counsel's performance is

only deficient when it is "outside the wide range of professionally competent assistance."[21]

Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's

deficient performance the outcome of the underlying proceeding would have been different.[22]

For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit,"

because in such cases, the attorney's performance is not deficient, and would not have affected

the outcome of the proceeding.[23]  Similarly, an ineffective assistance of counsel claim is not

established upon the showing that an error had an effect on the proceedings; rather, a defendant

must show that there is a reasonable probability that the outcome would have been different in

the absence of such errors.[24]

## IV.   <u>DISCUSSION</u>

In his long and repetitive petition spanning in excess of 150 pages, Vas raises a plethora

of arguments in support of his petition.  The Court has divided these into pretrial, trial, and

sentencing issues.

---

[19]  466 U.S. 668 (1984).

[20]  Id. at 687.

[21]  Id. at 690.

[22]  Lewis v. Horn, 581 F.3d 92, 106-07 (3d Cir. 2009).

[23]  Singletary v. Blaine, 89 F. App'x 790, 794 (3d Cir. 2004) (citing Moore v. Deputy Comm'r of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir.1991)).

[24]  Strickland,  466 U.S. at 694.

A.   **Pretrial Issues**

1.   ***Discovery Requests***

Vas notes that the Government failed to produce certain discovery he requested before trial, including a recording, transcript and/or summary of a 911 call made by Jean Hasting on the night Vas was arrested in front of her home, and the internal affairs files of the three arresting officers.  Vas maintains that the 911 records would have provided valuable information about the timing of events, and he could have used this information on direct and cross-examination to challenged the veracity of the police officers' accounts of events.  Vas wished to examine the arresting officers' internal affairs files in hopes of finding evidence of specific prior acts of untruthfulness he could use to impeach the credibility of the officers at trial.

a.   Ineffective Assistance of Pre-trial Counsel

First, Vas argues that pretrial counsel was ineffective for failing to obtain these materials prior to trial.  This argument fails, however, as pretrial counsel made, and actively pursued, discovery requests for the materials at issue, and asked the Court to order disclosure of these materials.  The Court heard argument and entered rulings on these motions, some favorable to Vas.  At no point did the Court find counsel to be incompetent or ineffective in pursuing access to these materials.

b.   Interference with Right to Effective Cross-Examination

Next, Vas argues that the Court's denial of these discovery motions undermined his ability to effectively cross-examine witnesses against him.  However, Vas failed to raise this issue through post-trial motion practice or on direct appeal, and therefore this argument is waived unless some exception applies.  The exception Vas raises is ineffective assistance of appellate

counsel.  Appellate counsel opted not to challenge the Court's discovery rulings, telling Vas in a letter dated April 1, 2008: "In reading the transcript, I truly feel there are no issues to be raised . . . ."[25]

### i.     *911 Call Records*

Before trial, the Government produced a copy of a Computer Aided Dispatch record or "CAD" produced on the night of Vas's arrest.[26]  This is the only documentation the Government could find which related to the dispatch of officers to the scene.[27]  The Government was not able to locate a tape, transcript, or written summary of the 911 call.[28]  At Petitioner's suppression hearing, the Government informed the Court that, in the ordinary course of business, 911 calls are recorded but the recordings are not preserved after 30 days unless there is a request for preservation.[29]  This issue was the subject of discussion at multiple hearings.  Ultimately, the Court found that the evidence requested did not exist and could not be produced.[30]  The Court did not find any Government misconduct.[31]

As the Court had ordered the Government to produced all *available* evidence regarding the 911 call, and then found it had done so, and as Petitioner does not present any evidence suggesting that this order or the Court's finding was in error, appellate counsel was not

---

[25] See Amended Petition, Ex. 4.

[26] 9/13/05 Hr'g. Tr. 6, 8.

[27] 10/25/05 Trial Tr. 22-25.

[28] 9/13/05 Hr'g Tr. 5-6, 8-9; 10/25/05 Trial Tr. 22-25.

[29] 9/13/05 Hr'g Tr. 9.

[30] 10/25/05 Hr'g Tr. at 23, 25.

[31] 10/25/25 Hr'g Tr. at 26-27.

ineffective for failing to raise the issue on appeal,[32] nor was Petitioner prejudiced by the failure to raise the issue.  Moreover, Petitioner asserts only speculation that the 911 call may have contained relevant, exculpatory information about the timeline of events the night of his arrest.

ii.   *Internal Affairs Files*

Vas made multiple written and oral pretrial motions seeking the internal affairs files for the three arresting officers.  The Court ruled that Vas was entitled to any exculpatory or impeachment evidence the Government found in the internal affairs files of Officers Eric and Richard Riddick, whom the Government intended to call as witnesses, and directed the Government to review the personnel and internal affairs files of Officers Eric Riddick and Richard Riddick for any relevant information before both trials.[33]  Ultimately, the internal affairs files were not produced, as the Government determined that there was no impeachment or exculpatory evidence therein.  However, the Court's rulings on the issue were favorable to Vas, and appellate counsel was not ineffective for failing to appeal the favorable rulings.

Regarding Officer Moore, the Government acknowledged that his internal affairs file contained information which could be used to impeach Officer Moore's credibility.  However, because the Government opted not to call Officer Moore as a witness, it did not produce his

---

[32] Thomas v. Horn, 570 F.3d 105, 121 n.7 (3d Cir. 2009) (counsel is not ineffective for failing to raise an objection where there is no merit to the underlying claim of error).

[33] Contrary to Vas's assertion in Ground Five, the Court never ordered the Government to make the internal affairs files available for the Court to review *in camera*.  Rather, the Court ordered the Government to review the files and produce any Brady or Giglio materials to Vas.  The Court, recognizing that such records are dynamic, ordered the Government to review them again in advance of the second trial.  See Order dated January 12, 2007.  The Government represented to the Court that there were no such materials.  See Letter dated 1/19/17, Doc. No. 160, Ex. B.  Petitioner has never put forth any plausible evidence to counter the Government's assertion that the files did not contain discoverable evidence.  See United States v. Rodriguez, No. 07-709, 2008 WL 4925010, at *3 (E.D. Pa. Nov. 17, 2008).

internal affairs file.[34]  At the suppression hearing, pre-trial counsel renewed Vas's discovery request for the internal affairs file, stating that the defense might be calling Officer Moore as a defense witness, and wished to see the file "to assist [] in deciding whether . . . to call him or not."[35]

As Vas and not the Government intended to call Officer Moore as a witness, the Court ruled that Vas was not entitled to any impeachment evidence contained in his internal affairs files.[36]  The Court found that while a defendant has the right to impeach his own witnesses, the Government is not obligated to produce non-exculpatory materials which can be used to impeach the truthfulness of a defense witness.[37]  The Court reaffirms its ruling here.  Moreover, even if this ruling was in error, it was harmless.  A reasonable jury could not infer that Officers Eric and Richard Riddick were testifying falsely in this case based solely on evidence that Officer Moore had engaged in untruthful behavior with regard to one or more unrelated cases in the past, and Vas put forth no evidence of possible biases, prejudices or ulterior motives which might motivate the three officers to lie in this case.

c.  Conclusion

With regard to all discovery issues raised in Vas's petition, the Court finds that the issues were raised and addressed by the counsel in the trial phase, and as there was ample legal support

---

[34] 9/13/05 Hr'g Tr. 10-11.

[35] 10/5/05 Hr'g Tr. 31.

[36] 10/5/05 Hr'g Tr. 14, 31; 2/6/07 Trial Tr. 127-134.

[37] Giglio v. United States, 405 U.S. 150, 154-55 (1972) (holding that the government must produce impeachment material regarding government witnesses); United States v. Presser, 844 F.2d 1275, 1278, 1280 (6th Cir. 1988) (government obligated to produce impeachment and exculpatory evidence regarding government witnesses, but was not obligated to disclose evidence that was merely impeaching and not material and exculpatory regarding defense witnesses).

for the Court's rulings on these issues, appellate counsel was not ineffective for failing to challenge these rulings on appeal.  In addition, Vas has failed to establish that the non-disclosure of the 911 call records or the non-disclosure of internal affairs files deprived him of a fair trial.[38] Accordingly, having failed to raise these claims on direct appeal or establish cause why they were not raised, and having failed to establish that the challenged discovery rulings resulted in a fundamental miscarriage of justice, Vas is barred from challenging the Court's discovery rulings in this Petition.

### 2.   *Suppression*

Vas argues that the Court erred when it ruled on Vas's Motion to Suppress without reviewing the internal affairs files of the arresting officers *in camera*, and alleges that post-trial and appellate counsel were ineffective for failing to raise this issue on appeal.  In fact, appellate counsel did challenge the Court's suppression ruling on direct appeal.[39]  The Court of Appeals upheld the rulings of this Court.  Nevertheless, as appellate counsel did not challenge the ruling based on the credibility of the officers, the issue Vas raises in his petition, the Court will examine the merits of Vas's argument.

The Court held a suppression hearing on September 13, 2005.  At the outset of that hearing, Vas's attorney noted that he had requested but not received the internal affairs files for the arresting officers.[40]  As stated, the Government noted that it had reviewed the internal affairs

---

[38] See United States v. Agurs, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

[39] The Court of Appeals did not deem the issue waived, although post-trial counsel did not file any post-trial motions.

[40] 9/13/05 Hr'g Tr. 6-7.

11

files of the officers it would call to testify at trial, Eric and Richard Riddick, and found no impeaching evidence therein,[41] and further noted that it did not intend to call Officer Moore to testify and therefore his records were not relevant.[42]  Because Mr. Egan had some questions regarding the content of Officers Eric and Richard Riddick's files, the Court directed counsel to work together to determine whether there were discoverable materials therein.[43]  As there was then an open question as to whether impeachment materials would be found in the internal affairs files for Officers Eric and Richard Riddick, the Court proposed going forward with the suppression hearing but "wait[ing] to make findings on credibility and the like until such time as counsel were satisfied that no other evidence needed to be presented."[44]

At the suppression hearing, the Government called only Eric Riddick to testify.  He testified that he saw Vas place a gun on the tire of a silver Mitsubishi while in the driveway behind the 5500 block of Beaumont Street.  Shortly thereafter, he identified himself to Vas as an officer, and Vas ran away from him and up on the front porch of a nearby home.  Vas was detained on or near the front porch of Jean Hastings but was not arrested immediately.  While he was detained by Officers Richard Riddick and Mark Moore, Officer Eric Riddick went back to the driveway, found two guns, with ammunition, hidden in the wheel well of  the Silver Mitsubishi, and found clothing Vas had initially been seen wearing (including a hat, shirt, and sunglasses) a short way down the driveway from the guns.  Because Vas had abandoned the gun,

---

[41] 9/13/05 Hr'g Tr. 10.

[42] 9/13/05 Hr'g Tr. 10-11.

[43] 9/13/05 Hr'g Tr. 14.

[44] 9/13/05 Hr'g Tr. 18.

the Government argued that there had been no improper search and seizure of the guns and discarded clothing.  When Officer Eric Riddick  returned to where Vas was detained, he and his colleagues placed Vas under arrest.

After an on-the-record discussion, the Court allowed Vas to call Officer Moore to testify regarding his own memory of the events leading to the seizure of the guns and Vas's arrest. Officer Moore's account did not contradict Officer Eric Riddick's account, but he was not with Officer Riddick when he observed Vas hide a gun, nor did he see Officer Riddick find the guns after Vas was detained.

After all testimony was complete, the Court noted again that it would "keep the matter under advisement until I received word from you as to whether or not there were any credibility issues that might be raised by [internal affairs file] discovery."[45]  On October 5, 2005, the parties convened for a hearing on another motion.  At that proceeding, the Government reported to the Court that it had:

> . . . reviewed all of the cases in which there are findings of any sort from [internal affairs] with respect to Richard Riddick and with respect to Eric Riddick.  All of the findings in all of their cases are that they are exonerated or that there was no sustained evidence, no sustained complaint against them.  That's as to Richard Riddick and as to Eric Riddick. They are the witnesses in my case.  As I had mentioned to the Court, there is Giglio with respect to Mark Moore.  I'm not calling him.[46]

With that report, the Court considered the evidence it needed to decide the suppression motion

---

[45]  9/13/05 Hr'g Tr. 77-78.

[46]  10/5/05 Hr'g Tr. 5-6.

closed,[47] and denied the Motion to Suppress.  The Court of Appeals has affirmed the Court's ruling.

The Court does not find error in its treatment of the credibility evidence with regard to the Motion to Suppress.  Therefore post-trial and appellate counsel were not ineffective in failing to challenge the rulings post-trial or on direct appeal.  Accordingly, the Court finds that Vas is barred from challenging the Court's rulings on the Motion to Suppress in this Petition.

### 3.     *Right to Self Representation*

Vas argues that the Court erred when it denied Vas's first request to represent himself in advance of his second trial, resulting in the dismissal of many *pro se* motions Vas filed. Inconsistently, he also argues that when the Court did rule that he could proceed *pro se*, after Vas renewed his request on the day trial began, the Court did so without a proper colloquy.  It is not clear from the petition how these rulings impacted on Vas' constitutional rights, and it is clear from the record that these rulings did not result in a miscarriage of justice.

On June 5, 2006,  Vas filed a Motion to Change Appointed Counsel.  He did not, at that time, ask to proceed *pro se*; he asked the Court to replace Mr. Meehan, his fourth attorney, with new counsel.[48]  The Court held a hearing on Vas's Motion on June 15, 2006, and denied the request to replace counsel but noted that Vas could make a written motion to represent himself,

---

[47] 10/5/05 Hr'g Tr. 13-14.  Mr. Egan agreed with the Court that Officer Moore's internal affairs file was not necessary to the resolution of the Motion to Suppress, as the government was not relying upon his testimony. 9/13/05 Hr'g Tr. 24.

[48] Among other complaints, Vas argued that Mr. Meehan had failed to raise certain issues in Vas's post-trial motions after his first trial.  While Mr. Meehan may have made strategic decisions not to raise certain issues Vas believed were meritorious, there was no prejudice to Vas as the Court granted his motion for a new trial on other grounds.

and the Court would decide that motion after a hearing.[49]  The Court held a second hearing on

October 26, 2006, in response to Vas's allegation that Mr. Meehan had violated attorney-client

privilege by discussing the case with his wife, who in turn talked about Vas's case with one of

her own clients.  Mr. Meehan disputed the allegation, and the Court found him credible.

Vas subsequently filed a stream of *pro se* letter requests and pretrial motions,[50] including

a Motion to Assert/Invoke Defendant's Right of Self Representation and Remove Appointed

Counsel filed on November 1, 2006.[51]  On November 21, 2006, the Court held a hearing

regarding Vas's request to proceed *pro se.*  At that hearing, the Court began conducting an

appropriate colloquy, but Vas was uncooperative, refusing to provide direct answers to  simple

"yes" and "no" questions such as "do you understand that you have a right to counsel; yes or

no?"[52]  Based on Vas's inability to directly answer simple questions posed early in the Court's

colloquy, the Court denied Vas's Motion without conducting a full colloquy.[53]  Having denied

Vas's Motion to represent himself, the Court also denied all *pro se* motions Vas had filed, except

those that Mr. Meehan advised the Court he wished to pursue.

When Vas renewed his request to proceed *pro se* on the day trial began,[54] the Court

conducted an extensive colloquy[55] before determining that Vas's waiver of his right to counsel

---

[49] 6/15/06 Hr'g Tr. 21.

[50] Doc. Nos. 120-23, 125, 129-39, 141, 148, & 149.

[51] Doc. No. 137.

[52] 11/21/06 Hr'g Tr. 6-8.

[53] 11/21/06 Hr'g Tr. 7; Order dated November 27, 2006.

[54] 2/5/07 Trial Tr. 12.

[55] 2/5/07 Trial Tr. 13-22.

was knowing and voluntary.[56]  At this hearing, Vas was cooperative and provided responsive answers to the Court's questions.  During the colloquy, the Court insured that he had the ability to represent himself, and insured that he understood his constitutional right to representation whether or not he could afford an attorney, the risks of proceeding without an attorney, the nature of the charges against him, the statutory minimum and maximum sentences he faced, and the possibility that the outcome of this case could impact on the homicide case pending against him in state court.[57]  The Court cautioned Vas against proceeding *pro se*, and appointed Mr. Meehan to serve as back-up counsel during the trial.[58]  The Court's colloquy was sufficient to determine whether Vas' waiver was knowing and voluntary, and post-trial and appellate counsel were not ineffective for failing to challenge the sufficiency of the colloquy post-trial.

In addition to arguing that he was prejudiced by the Court's granting of motion to proceed *pro se*, Vas also argues that he was prejudiced by the Court's failure to grant his motion earlier. He reasons that had he been allowed to proceed *pro se* pre-trial, the Court would have addressed his *pro se* pre-trial motions.  Instead, after denying his motion to proceed *pro se* in November 2006, the Court dismissed his *pro se* motions without addressing the merits.  However, the Court did allow Mr. Meehan to pursue any motions he believed were meritorious, and he pursued several discovery motions on Vas's behalf.[59]  Vas does not point to a single motion the Court

---

[56] 2/5/07 Trial Tr. 22-23.

[57]  2/5/07 Trial Tr. 13-22.

[58] 2/5/07 Trial Tr. 22-23.

[59] Vas notes that the Court ruled on certain discovery motions after a telephone conference with counsel for both parties, and Vas was not invited to participate.  At issue were the motions for the 911 call records and the internal affairs files of the arresting officers, which the Court has discussed at length *infra*.  Vas was represented by counsel during the telephone conference.  Therefore, under Fed. R. Cr. P. 43(b)(3), the Court committed no error and Vas was not prejudiced by his exclusion from the telephone conference.

dismissed without review which was meritorious and, if granted, would have altered the outcome of the  trial.[60]

Accordingly, the Court cannot find that it erred in denying Vas's earlier request for self-representation or that Vas was prejudiced by this ruling.  Nor does the Court find that it erred in granting his right to proceed *pro se* just prior to the start of trial.  Thus, the Court cannot find that post-trial and appellate counsel were ineffective for failing to raise these issues, and the issues are not properly before the Court on this petition.

**B.     Trial Issues**

Vas argues: 1) that the Court erred when it failed to provide the jury with the police report or time of arrest when it requested that information; 2) that the Court erred when it sustained an objection and did not permit Vas to ask Officer Richard Riddick a broad question about whether or not he had committed perjury in prior proceedings; and 3) that the officers lied under oath.

**1.      *Failure to Provide Jury with Requested Information***

During deliberations, the jury sent a question to the Court, which read: "Can we either see the police report for the arrest, or find out the time at which the defendant was placed under arrest?"[61]  Before the jury was brought in so that the Court could respond to their question, the Court had a lengthy discussion with Vas and the Government on the record, and ruled that it would deny both requests.[62]

---

[60] For example, one motion asked the Court to secure the presence of Vas's private investigator at trial, despite the fact that Vas could have called that investigator to testify at trial without any action by the Court.  Other motions asked the Court to appoint a second private investigator, and provide funds to pay that investigator, and to appoint an identification expert, and funds to pay that expert.

[61] 2/7/07 Trial Tr. 65-66.

[62] 2/7/07 Trial Tr. 65-74.

The Court denied the request for the time of arrest because it was not a fact in evidence, and the evidence was closed.[63]  Vas does not show otherwise in his petition.

Regarding the police report, Vas has failed to counter the Court's ruling that it was a hearsay document which corroborated testimony presented at trial,[64] or the Court's concern that as an official document it might carry undue weight with the jury, prejudicing the defense.[65] Furthermore, as the police report was corroborative of testimony from the arresting officers, much of the document was read to the jury verbatim, and Vas examined and cross-examined the arresting officers at length about the content of the report and the timeline of events, the Court fails to understand how preventing the report itself from going to the jury created a miscarriage of justice.  Therefore, the Court finds that post-trial and appellate counsel were not ineffective in failing to raise these issues in post-trial motions or on appeal, and so the issue is waived.

### 2.      *Sustained Objection to Broad Questions about Perjury*

At trial, Vas asked Officer Richard Riddick: "Did you commit perjury at any of these hearings?"  The Government objected and the Court sustained the objection.  Vas now says this violated his right to conduct effective cross-examination of witnesses.  Similarly, Vas argues that the Court should have permitted him to cross-examine Moore about unspecified prior misconduct documented in his internal affairs file, the precise nature of which was unknown to Vas.

Before a party may question a witness for impeachment purposes, he must possess a good

---

[63] 2/7/07 Trial Tr. 74-75.

[64] 2/7/07 Trial Tr. 71.

[65] See 2/6/07 Trial Tr. 166-68.

faith, reasonable basis to believe that *specific instances* demonstrating character for

untruthfulness, in fact, occurred.[66]  In the absence of such a belief, such questions can be

harassing, embarrassing, or confusing to the jury.[67]   Where Vas was able to point to specific

prior inconsistent statements about which he wished to cross-examine Eric Riddick, the Court

allowed such cross-examination.[68]  However, Vas did not lay foundation cross-examining Officer

Richard Riddick about his general truthfulness.  His belief that Officer Richard Riddick had been

untruthful in the past was based on mere speculation and was therefore not reasonable.

Accordingly, the Court finds that it did not err in sustaining this objection and prohibiting Vas

from posing broad questions about truthfulness to impeach his own and the Government's

witnesses.  Furthermore, as post-trial and appellate counsel were justified in not raising this issue

post-trial, there was no ineffective assistance of counsel and the issue is waived.

### 3.    *Assertion That the Officers Lied under Oath.*

The Court will not address this issue, as the jury assessed the credibility of the officers,

the Court of Appeals upheld the verdict on Vas's sufficiency of the evidence challenge, and Vas

alleges no fundamental defect in the proceedings or later-discovered evidence tending to prove

the officers lied.

### 4.    *Judicial Bias*

Finally, Vas argues that he was denied fair pre-trial, trial, and post-trial proceedings due

to the Court's bias towards him.  During the pre-trial stage, he filed a motion for the Court to

---

[66] Fed. R. Ev. 608(b).

[67] See Fed. R. Ev. 611(a).

[68] See 2/6/07 Trial Tr. 32.

recuse, which was denied after a hearing on October 26, 2006. Now, Vas again argues that the Court has been hostile, ill-tempered and impatient towards him in prior proceedings. The Supreme Court has held that such allegations are not sufficient without evidence of an inability to render fair judgment.[69]  Moreover, it is notable that none of the instances alleged in the Petition occurred in front of the jury.

Vas also argues that the Court made a statement with racial overtones at a hearing held on January 6, 2006, at which the Court granted his motion for new counsel. At that hearing, the Court said: "I need to address how you wish to proceed in terms of legal representation. You are still entitled to have court ordered representation, free of charge, because of your financial situation which is obvious to me–", to which Vas responded: "That's Good."[70]  What was obvious to the Court was that Vas's financial circumstances had not changed since his prior request for court appointed counsel had been approved, given his incarceration during that time. There was no racial meaning to that statement.

Accordingly, as Vas has not raised a meritorious claim, post-trial and appellate counsel were not ineffective for failure to raise the issue of bias. Accordingly, this issue, which was not raised on appeal, is waived.

**C.**   **Sentencing**

At the conclusion of the second trial, the Court appointed Mr. Meehan to represent Vas in post-trial proceedings.[71]  Because Mr. Meehan failed to file a post-trial motion or sentencing

---

[69] Liteky v. United States, 510 U.S. 540 (1994).

[70] 1/6/06 Hr'g Tr. 8.

[71] 2/8/07 Trial Tr. 18.

memorandum, Vas asked the Court at sentencing if he could have different counsel or proceed *pro se*.[72]  The Court denied his request for alternative counsel, as he did not show good cause,[73] but allowed Vas to proceed *pro se* when he expressed desire to do so,[74] noting that "I have already been through this many times with you, I know that you are capable of representing yourself, you know what you are facing . . . ."[75]  Having conducted a full colloquy just three months earlier, and then presided over a trial where the Court observed Vas representing himself, the Court did not engage in a full <u>Faretta</u> inquiry at sentencing.  Nor was it required to do so.[76]

As set forth in the revised Presentence Investigation Report ("PSR"), prepared by Leon C. King of the U.S. Probation Office on April 30, 2007, because Vas had at least two prior felony convictions for crimes of violence, he received a base offense level of 24 under Guideline § 2K2.1.[77]  He received an additional two points under the specific offense calculation because the Court found that one of the two guns he was convicted of possessing in this matter had an obliterated serial number, thereby resulting in a total offense level of 26.[78]

The Probation Office computed a criminal-history score of 17 based on six prior

---

[72] 5/7/07 Hr'g Tr. 6-7, 23.

[73] Good cause is defined as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney.  <u>United States v. Gibbs</u>, 190 F.3d 188, 207, n. 10 (3d Cir. 1999).  Although the Court conducted an inquiry as to whether such reasons were present in this case, Vas did not put forth convincing evidence that any of these had occurred with Mr. Meehan, his third appointed counsel.

[74] 5/7/07 Hr'g Tr. 25.

[75] 5/7/07 Hr'g Tr. 24.

[76] <u>United States v. McFadden</u>, 630 F.2d 963, 971-72 (3d Cir. 1980).

[77] <u>See</u> Apr. 30, 2007 Presentence Investigation Report ¶ 14.  In assessing Vas's sentence, the Probation Office used the November 1, 2001 edition of the <u>Guidelines Manual</u>.  <u>Id.</u> ¶ 13.

[78] <u>Id.</u> ¶¶ 15, 23.

convictions.  Vas objected to being assessed three additional points each for two state court convictions– carrying firearms without a license and third-degree murder– as both convictions arose out of the same facts and circumstances.  At the May 7, 2007 sentencing hearing, the Court found that the firearms charge was related to the murder charge and reduced the criminal-history score from 17 to 14.  This placed Vas in criminal-history category VI.[79]

Given the total offense level of 26 and criminal-history category of VI, the advisory guideline range for imprisonment was 120 to 150 months.[80]  The statutory maximum for a charge under 18 U.S.C. § 922(g)(1), however, is 120 months.[81]  Accordingly, the Court found that the effective guideline range was 120 months.[82]  After considering all relevant factors, the Court imposed a 120-month sentence.

Vas challenges several findings made by the Court during the sentencing hearing in his Petition.  For example, he challenges the Court's treatment of a resisting arrest conviction as a crime of violence over Vas's objection.  The Court finds that this ruling was correct, as the Third Circuit has ruled that "resisting arrest necessarily involves confronting the authority of a police officer who is likely armed and charged with defending the public.  Because the police officer is duty-bound to effectuate the arrest, the offense engenders a significant risk of conflict and, correspondingly, a significant risk of injury."[83]  Therefore, the Third Circuit held that resisting

---

[79] Id. ¶ 47.

[80] Id. ¶ 79.

[81] Id.

[82] Id.

[83] U.S. v. Stinson, 592 F.3d 460, 465 (3d Cir. 2010).

arrest "is, by definition, purposeful, aggressive and violent."[84]  Vas also challenges a two-point enhancement for possessing a gun with an obliterated serial number given the jury's finding in favor of Vas on a non-binding special interrogatory.  The Court is permitted to make factual findings pertinent to a sentencing guideline range determination and was not bound by the jury's finding.  Furthermore, while the jury needed to find that Vas had possessed  a second gun with an obliterated serial number beyond a reasonable doubt, in making factual findings relevant to the guidelines determination the Court correctly applied the preponderance of evidence standard.[85] Accordingly, the Court did not err in independently determining that the two-point enhancement applied.  Finally, Vas challenges the three criminal history points given for the state murder conviction, as the conviction occurred after the conviction but before sentencing in the case before this Court.  However, under Guideline § 4A1.2, App. Note 1, this was correct.

While these issues were not raised on direct appeal, Vas argues that his right to raise them here was not waived because appellate counsel was ineffective in failing to challenge these elements of his sentence.  Because there was no merit to any of his arguments, however, the Court finds appellate counsel was not ineffective for failing to raise these sentencing issues on appeal, and the issues are now waived.

Finally, by a motion which, in the interest of justice, the Court construes as a supplement to his § 2255 petition,[86] Vas argues that the Court should adjust or reduce his sentence because Vas was given three points at sentencing for a state court murder conviction which Vas claims

---

[84] Id. (citation omitted).

[85] Unlike the jury, at sentencing the Court needed only determine that there was a second gun with an obliterated serial number by a preponderance of evidence.   5/7/07 Hr'g Tr. 26-27.

[86] Johnson v. United States, 544 U.S. 295, 303-04 (2005).

was later reversed by the Superior Court of Pennsylvania.[87]  Those three points for this conviction changed his criminal history category from V to VI, and therefore resulted in a higher minimum sentence under the sentencing guidelines.[88]  In addition, the Court considered the entirety of his criminal history, including his murder conviction, in determining the appropriate sentence.

Because the Court cannot conclude that Vas's sentence would have been the same in the absence of the murder conviction, the Court must ascertain the status of his state court murder conviction before it can determine whether it is necessary to vacate the sentence and conduct a new sentencing hearing.  Accordingly, the Court will require the Government to submit to the Court the per curium opinion of the Pennsylvania Superior Court and any other documents which clarify the ruling of the Pennsylvania Superior Court, and documentation of any subsequent action by the Philadelphia Court of Common Pleas, on the homicide case and all related cases. The Court will reserve ruling on *this issue only* pending the Government's submission.

---

[87] The state court docket sheet indicates that on March 30, 2011, the Superior Court vacated the judgment of sentence and remanded the case for a new trial.  On July 12, 2011, the docket indicates "only gun charge remains."

[88] For an offense level of 26 and a criminal history in category V, the minimum guidelines sentence would be 110 months, compared to a minimum guidelines sentence of 120 months for criminal history category VI.  120 months is the statutory maximum regardless of the criminal history category.